UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANGELO IAFRATE, SR., ET AL., | Case No. 18-11150 |
| Plaintiffs, | SENIOR U.S. DISTRICT JUDGE ARTHUR J. TARNOW |
| v. | U.S. MAGISTRATE JUDGE R. STEVEN WHALEN |
| ANGELO IAFRATE, INC., ET AL., | |
| Defendants. | |

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [25]; AND REMANDING CASE TO STATE COURT**

Before the Court is Defendant Angelo Iafrate, Inc. and Defendant Robert Adcock's Motion to Dismiss [25] filed on September 19, 2018. On April 16, 2019, the Court held a hearing on the Motion. For the reasons explained below, the Court **GRANTS in part** Defendants' Motion with respect to Plaintiffs' securities fraud claims and **REMANDS** Plaintiffs' state law claims to the 16th Judicial Circuit Court in Macomb County.

**FACTUAL BACKGROUND**

In 1969, Plaintiff Angelo Iafrate, Sr. ("Angelo Sr.") established the Angelo Iafrate Construction Company ("AICC"), a road-building construction company serving metro-Detroit. AICC issued shares to Angelo Sr. and to his three sons,

1

Plaintiff Dominic Iafrate, Plaintiff Angelo E. Iafrate ("Angelo Jr."), and John Iafrate,[1] all of whom had worked for the business at different times.

Around the year 2000, Angelo Sr., Dominic, and John moved to Florida. Angelo Jr. remained in Michigan to run AICC. In 2002, Angelo Jr. became AICC's President and Executive Director. At the time, Defendant Robert Adcock was serving as AICC's Executive Vice President.

In 2011, Plaintiffs began to discuss the possibility of selling AICC. After consulting with AICC's CPA and corporate counsel, Plaintiffs agreed to sell their interest in AICC to the Company's employees via an Employee Stock Ownership Plan ("ESOP").

In March 2013, AICC established an ESOP Exploratory Committee of which Adcock was a member. In July 2013, Plaintiffs were given a presentation outlining the terms on which the ESOP would purchase their stock in AICC, the proposed fair market value price, and the risks involved with seller financing an ESOP transaction.

The presentation also provided information regarding an internal rate of return, which included the issuance of warrants as additional compensation. "[T]he Warrant[s] entitle[d] the holder to its proportional share of the increase in value, if

---

[1] Plaintiff John Iafrate Irrevocable Trust was established for the benefit of Angelo Sr.'s son, John Iafrate. Angelo Sr. is its trustee.

any, of the per share price of common stock in excess of the Exercise Price." Amend. Compl. ¶ 26.

Ultimately, Plaintiffs agreed to finance 100% of the purchase price at below bank market interest rates. Plaintiffs' loan to the Company was secured by a stock pledge. The parties negotiated a purchase price of $36.7 million. A new company was formed to which Plaintiffs contributed their stock in AICC in exchange for 30,000 shares. Thereafter, the new company ("the Company") formed an ESOP which purchased all 30,000 of Plaintiffs' shares in exchange for $36.7 million. On December 6, 2013, to finalize the transaction, the Company delivered Senior and Junior Promissory Notes ("Notes") to each Plaintiff, which totaled $36.7 million and provided for quarterly interest payments over ten a period of years. Defs.' Ex. B; Ex. C.

The Notes contained mandatory prepayment provisions, § 1.3, which required partial prepayments on an annual basis if the Company had excess funds. The Notes also contained discretionary prepayment provisions, § 1.4, which allowed for prepayment of all or part of the principal at any time. These prepayment provisions authorized only *pro rata* payments to each Plaintiff.

In addition to the Notes, the Company issued Common Stock Warrants ("Warrants") to each Plaintiff. The Warrants entitled each Plaintiff, as holder, the option to: purchase shares from the Company at the $225.00 Exercise Price per

share; or, redeem shares for cash payment in the amount of the share price in effect as of such date ("Strike Price") less the Exercise Price. The Warrants also contained a Warrant Term provision which provided that they "terminate on, and may no longer be exercised on or after, the date that is 60 days after the date that the Company has paid in full both the Senior Promissory Note and Junior Promissory Note issued by the Company in favor of the Holder." Common Stock Warrant, Defs.' Ex. A, ¶ 3.

Plaintiffs also entered into an Intercreditor Agreement between themselves which provided that their security interests would have equal priority and would be equally enforced for their *pro rata* benefit.

After closing, Adcock became the president of the Company and co-Trustee of the ESOP. Plaintiffs Dominic and Angelo Jr. remained on the Company's Board of Directors.

In March 2016, Adcock announced that he had sought permission from a bonding company to make a $4 million prepayment in accordance with the Notes. At that time, despite the agreements' *pro rata* clauses, Angelo Jr. told Adcock that he wanted his portion of prepayment on the Notes paid to his father, Angelo Sr., because of his age.

In November 2016, Adcock obtained approval for a $5.4 million prepayment on Angelo Sr.'s Notes. On December 20, 2016, Adcock directed the Company to

make a $5.4 million payment directly to Angelo Sr. Angelo Sr. held the money in trust for all Plaintiffs.

After the payment to Angelo Sr., the Company's executives questioned Adcock about whether Angelo Sr. had exercised his Warrant. Plaintiffs allege that "at that point, if not sooner, Adcock became aware that the Company could take the position that a Warrant-triggering event had occurred[.]" Amend. Compl. ¶ 84.

On February 17, 2017, Adcock directed the Company to make payments to Dominic and John Iafrate Trust in the amounts of $9.7 million and $3.3 million, respectively. Dominic and John Iafrate Trust held the $13 million in trust pursuant to the Intercreditor Agreement.

On February 2, 2018, Adcock directed the Company to make a payment of $8.9 million to Angelo Jr. Following the final payment to Angelo Jr., the entire indebtedness evidenced by the Notes, plus interest, had been paid in full.

On March 20, 2018, all Plaintiffs attempted to exercise their Warrants for cash. The Company, however, refused to make payments to Angelo Sr., John Iafrate Trust, and Dominic, claiming that their Warrants had expired sixty days after the Company had paid the outstanding principal balances on their respective Notes. The Company honored Angelo Jr.'s Warrant because he exercised his Warrant within sixty days of his Notes' payments. In its Warrant distribution to Angelo Jr., the Company valued each share at $856.50.

## PROCEDURAL HISTORY

On April 11, 2018, Plaintiffs commenced this action alleging securities fraud and breach of contract. On July 5, 2018, Plaintiffs filed an Amended Complaint [13] alleging: securities violations under § 10b(5) (Counts I and II); and state law claims for breach of contract (Count III), reformation (Count IV), unjust enrichment (Count V), and fraud (Count VI).

The Company and Robert Adcock filed a Motion to Dismiss [25] on September 19, 2018. Plaintiffs filed a Response [35] on October 31, 2018. Defendants filed a Reply [38] on December 7, 2018. The Court held a hearing on the Motion on April 16, 2019.

## LEGAL STANDARD

Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, [Plaintiffs] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [Plaintiffs'] well-pleaded factual allegations and determine whether [they are] entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## ANALYSIS

I. **Section 10(b)-5**

The gravamen of the Amended Complaint is Plaintiffs' claim that Adcock misrepresented the Company's position concerning the exercisability of the Warrants during the ESOP transaction and payment distribution process in violation of federal securities laws.

Section 10(b) of the Securities Exchange Act 1934 provides: "It is unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations . . . ." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976) (quoting 15 U.S.C. 78j).

"To state a securities fraud claim under Section 10(b), [Plaintiffs] must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which [Plaintiffs] justifiably relied and which proximately caused [Plaintiffs'] injury." *Frank v. Dana Corp.*, 547 F.3d 564, 569 (6th Cir. 2008) (internal citation and quotation marks omitted).[2]

---

[2] Defendants also cite the heightened pleading standard for securities fraud claims set forth in Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA") which requires that the Amended Complaint "allege the time, place, and content of the alleged misrepresentation [or omission] on which [Plaintiffs] relied [and] the fraudulent scheme . . . ." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 461, 470 (6th Cir. 2014) (noting that to satisfy this heavy burden, "plaintiffs must identify each misleading or false statement and explain how it is misleading . . . .").

7

### A. Failure to disclose the Company's position on warrant-triggering events

In Count I, Plaintiffs allege that Adcock had a duty to disclose the Company's position that payment of an individual Plaintiff's notes was a warrant-triggering event. Plaintiffs further allege that Adcock devised a scheme to intentionally conceal this position in April 2017 when Angelo Sr.'s warrant term expired.

Plaintiffs' argument that Defendants made a material omission in connection with the ESOP transaction by failing to disclose their view that the warrant clock began ticking upon payment of an individual holder's notes is unavailing. By Plaintiffs' own admissions, Adcock could not have omitted this information "in connection with" the ESOP transaction because the Company had not even adopted this position by the date of closing. Adcock is alleged to have devised a scheme to formulate and conceal the Company's position after Angelo Sr.'s Notes had been paid in full, nearly four years after the close of the ESOP transaction.

Moreover, Adcock owed no duty to disclose to Plaintiffs—creditors in the ESOP transaction—the Company's interpretation of the Warrant Term provision. As Defendants pointed out at the hearing, it would be absurd to impose on Adcock, who was acting as trustee of the ESOP, a duty to tell Plaintiffs how to interpret their Warrants in a way that would harm the very group of employees he represents. And even if, as Plaintiffs suggest, Adcock had "a duty to disclose [new

### A. Failure to disclose the Company's position on warrant-triggering events

In Count I, Plaintiffs allege that Adcock had a duty to disclose the Company's position that payment of an individual Plaintiff's notes was a warrant-triggering event. Plaintiffs further allege that Adcock devised a scheme to intentionally conceal this position in April 2017 when Angelo Sr.'s warrant term expired.

Plaintiffs' argument that Defendants made a material omission in connection with the ESOP transaction by failing to disclose their view that the warrant clock began ticking upon payment of an individual holder's notes is unavailing. By Plaintiffs' own admissions, Adcock could not have omitted this information "in connection with" the ESOP transaction because the Company had not even adopted this position by the date of closing. Adcock is alleged to have devised a scheme to formulate and conceal the Company's position after Angelo Sr.'s Notes had been paid in full, nearly four years after the close of the ESOP transaction.

Moreover, Adcock owed no duty to disclose to Plaintiffs—creditors in the ESOP transaction—the Company's interpretation of the Warrant Term provision. As Defendants pointed out at the hearing, it would be absurd to impose on Adcock, who was acting as trustee of the ESOP, a duty to tell Plaintiffs how to interpret their Warrants in a way that would harm the very group of employees he represents. And even if, as Plaintiffs suggest, Adcock had "a duty to disclose [new

### A. Failure to disclose the Company's position on warrant-triggering events

In Count I, Plaintiffs allege that Adcock had a duty to disclose the Company's position that payment of an individual Plaintiff's notes was a warrant-triggering event. Plaintiffs further allege that Adcock devised a scheme to intentionally conceal this position in April 2017 when Angelo Sr.'s warrant term expired.

Plaintiffs' argument that Defendants made a material omission in connection with the ESOP transaction by failing to disclose their view that the warrant clock began ticking upon payment of an individual holder's notes is unavailing. By Plaintiffs' own admissions, Adcock could not have omitted this information "in connection with" the ESOP transaction because the Company had not even adopted this position by the date of closing. Adcock is alleged to have devised a scheme to formulate and conceal the Company's position after Angelo Sr.'s Notes had been paid in full, nearly four years after the close of the ESOP transaction.

Moreover, Adcock owed no duty to disclose to Plaintiffs—creditors in the ESOP transaction—the Company's interpretation of the Warrant Term provision. As Defendants pointed out at the hearing, it would be absurd to impose on Adcock, who was acting as trustee of the ESOP, a duty to tell Plaintiffs how to interpret their Warrants in a way that would harm the very group of employees he represents. And even if, as Plaintiffs suggest, Adcock had "a duty to disclose [new

information which] render[ed] a prior disclosure objectively inaccurate, incomplete, or misleading[,]" *In re Omnicare*, 769 F.3d at 471, Adcock's subjective interpretation of a contractual provision would not fall within these disclosure requirements. Adcock did not discover new information which would have rendered any aspect of the ESOP transaction misleading—at most, he changed his interpretation of a single clause in the Common Stock Warrant to the benefit of ESOP participants.

**B. Adcock's misrepresentation regarding the fair market value of the stock**

In Count II, Plaintiffs allege that Adcock manipulated the Company's financial statements and intentionally undervalued the share price of the Company in its warrant distribution to Angelo Jr. Plaintiffs further allege that, in February 2018, Adcock admitted as much to Angelo Jr. when he stated, "I am not going to bullshit a bullshitter, we undervalued the stock." Amend. Compl. ¶ 111.

Even if the Court were to construe Adcock's statement as having been made in connection with Angelo Jr.'s exercise of his Warrant for cash, Plaintiffs have not shown that Angelo Jr. justifiably relied on Adcock's statements in electing cash payment in lieu of shares for purposes of stating a § 10b-5 claim. As Defendants point out, Adcock confessed to Angelo Jr. that he had undervalued the stock in February 2018, well in advance of March 20, 2018, the date on which Angelo Jr. exercised his Warrants. That Angelo Jr. exercised his Warrants notwithstanding the

fact that he knew Adcock had undervalued the market price of the stock undermines Plaintiffs' claim that Angelo Jr. justifiably relied on Adcock's misrepresentations.

Plaintiffs have failed to state a plausible claim for relief under § 10(b)-5. Accordingly, the Court will dismiss Counts I and II of the Amended Complaint.

I. **Supplemental Jurisdiction**

Remaining in this action are Plaintiffs' Michigan law claims. Where, as here, the Court's jurisdiction "originally [is] premised on a federal claim and that claim subsequently [is] dismissed, remand to the state court [is] a matter of discretion." *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 211 (6th Cir. 2004). In determining "whether to resolve a pendent state claim on the merits . . . . [the Court] should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Id.* (internal citations and quotation marks omitted).

At its core, this case is a breach of contract dispute that belongs in state court. Plaintiffs' attempt to persuade the Court that this action concerns "plain vanilla securities fraud" is unavailing. That the case involves the sale of securities is not dispositive of the inquiry under § 10(b)-5. The Court need not, and will not, resolve Plaintiffs' state claims on the merits, but will instead remand to the 16th Judicial Circuit Court.

## CONCLUSION

For the reasons explained above,

**IT IS ORDERED** that Defendants' Motion to Dismiss [25] is **GRANTED in part as to Counts I and II**.

**IT IS FURTHER ORDERED** that this case is **HEREBY REMANDED** to the Macomb County 16th Judicial Circuit Court.

**SO ORDERED**.

                                                s/Arthur J. Tarnow
                                                Arthur J. Tarnow
Dated: April 25, 2019                 Senior United States District Judge